## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

THI OF NEW MEXICO AT HOBBS
CENTER, LLC, and THI OF NEW
MEXICO, LLC,

       Plaintiffs,

v.                                   Civ. No. 11-792 MV/LAM

JASON SPRADLIN, as Personal
Representative of the Wrongful Death
Estate of Douglas A. Spradlin, Jr., Deceased,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Compel Arbitration [Doc. 3], Defendant's Motion to Dismiss [Doc. 9], and Plaintiffs' Motion to Strike Defendant's Supplement with Respect to His Motion to Dismiss [Doc. 32].   The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Plaintiffs' Motion to Compel is well taken in part and will be GRANTED IN PART and DENIED IN PART; Defendant's Motion to Dismiss is not well taken and will be DENIED; and Plaintiff's Motion to Strike will be DENIED AS MOOT.

## <u>BACKGROUND</u>

On August 31, 2006, Douglas A. Spradlin, Jr. was admitted to THI of New Mexico at Hobbs Center, LLC ("Hobbs Center") to obtain care and treatment services.   In connection with his admission, Mr. Spradlin's daughter, Melissa Hardy, as Mr. Spradlin's "Fiduciary Party," executed a Hobbs Center admission contract (the "Admission Contract").   Doc. 1-1.   The

1

Admission Contract provides that, as Mr. Spradlin's fiduciary party, Ms. Hardy "shall be bound by the applicable terms and conditions of this Contract."   *Id.* at 1.   By checking one out of several boxes provided, Ms. Hardy indicated that she was executing the Contract in the capacity of "Immediate Family Member."   *Id.* at 6.

      The Admission Contract contains a Section entitled, "Arbitration," which provides:

> Pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of any kind (*e.g.*, whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of healthcare services, any agreement between the parties, the provision of any other goods or services by [Hobbs Center] or other transactions, contracts, or agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").

*Id.* at 5.   Directly below this provision and above the signature line is the following language, in bolded, capital letters:   "The undersigned acknowledge that each of them has read and understood this contract, and that each of them voluntarily consents to all of its terms."   *Id.*   That same day, Mr. Spradlin executed a Durable Power of Attorney for Financial and Healthcare Decision Making (the "Power of Attorney"), appointing Ms. Hardy, along with Mr. Spradlin's son, Jay Spradlin, to serve as his attorney-in-fact.   Doc. 1-2, at 1.

      Ms. Hardy explained in an affidavit that Mr. Spradlin applied for admission to Hobbs Center on his doctor's recommendation, because he was suffering from dementia.   Doc. 9-1, at ¶ 3.   Ms. Hardy accompanied her father to Hobbs Center.   *Id.* at ¶ 4.   Ms. Hardy, who has an eleventh-grade education, states that did not know what the term "arbitration meant," and that no

one at Hobbs Center explained that term to her.   *Id.* at ¶¶ 7-8.   Ms. Hardy further states that she

felt rushed when she was filling out the admission documents for her father.   *Id.* at ¶ 8.

Mr. Spradlin was a resident at Hobbs Center until March 6, 2009.   Doc. 9-1 at ¶ 27.   He

died five days later on March 11, 2009.   *Id.* at ¶ 1.   On June 29, 2011, Defendant Jason Spradlin,

Mr. Spradlin's son, in his capacity as personal representative of Mr. Spradlin's wrongful death

beneficiaries, filed an action in the First Judicial District Court of the State of New Mexico (the

"State Court Action"), against, *inter alia*, Plaintiffs herein, alleging wrongful death, negligence,

negligence per se, misrepresentation, violation of the New Mexico Unfair Trade Practices Act, and

punitive damages.   *See* Doc. 9-1.   Defendant alleges that, while a resident of Hobbs Center, Mr.

Spradlin suffered physical and emotional injuries due to inadequate care, and his health and

physical condition deteriorated beyond that caused by the normal aging process.   *See* Doc 9 at

1-2.   Defendant further alleges that Mr. Spradlin developed infections and resulting injuries,

suffered from nutritional issues, and fell on multiple occasions, causing him to suffer injuries,

including a right hip fracture.   *Id.*

On September 6, 2011, Plaintiffs Hobbs Center and THI of New Mexico, LLC ("THI"),

commenced the instant action under Section 4 of the Federal Arbitration Act ("FAA"), basing

federal jurisdiction on the diversity of citizenship between Plaintiffs, both Delaware limited

liability companies, and Defendant, alleged to be a New Mexico citizen.   *See* Doc. 1.   In their

Complaint and in their Motion to Compel Arbitration, filed on September 7, 2011, Plaintiffs seek

an order compelling Defendant to arbitrate the claims he asserted against Plaintiffs in the State

Court Action, and staying this case and the State Court Action pending arbitration.   *See* Docs. 1

and 3.   On December 16, 2011, Defendant filed a Motion to Dismiss.   *See* Doc. 9.   Thereafter,

on June 12, 2012, Defendant filed a Supplement with Respect to His Motion to Dismiss and Reply

Thereto, adding facts and argument based on recently received medical records.   Doc. 27.   On June 21, 2012, Plaintiffs filed a Motion to Strike Defendant's Supplement.   Doc. 32.

## LEGAL STANDARD

The FAA provides that a written agreement requiring arbitration of controversies arising out of "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.   Section 2 of the FAA creates "a substantive rule applicable in state as well as federal courts."   *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).   Under Section 4 of the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."   9 U.S.C. § 4.   In enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."   *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).   There is a "clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2).   Further, the Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and that "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."   *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1745 (2011).

The FAA, however, "was not enacted to force parties to arbitrate in the absence of an agreement."   *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997).   Congress' concern, rather, 'was to enforce private agreements into which parties had entered."   *Id.* Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be

established before the FAA can be invoked." *Id.* at 1287.   The Court "look[s] to state law

principles of contract formation to tell us whether an agreement to arbitrate has been reached."   *Id.*

It is the party seeking judicial enforcement of an arbitration agreement who "bears the burden of

persuasion."   *THI of New Mexico at Hobbs Center, LLC v. Patton (Patton II)*, Civ. No. 11-537

(LH/CG), 2012 WL 112216, *6 (D.N.M. Jan. 3, 2012) (citation omitted).

## DISCUSSION

Under Section 4 of the FAA, Plaintiffs move to compel Defendant to arbitrate his claims

against them.   In support of their motion, Plaintiffs argue that the arbitration provision in the

Admission Contract is valid and enforceable, and that Defendant's claims fall within the

substantive scope of that provision.   Plaintiffs further request that the Court stay this action and

the State Court Action, pending arbitration.   Plaintiffs also move to strike the supplemental

pleading filed by Defendant in support of his motion to dismiss.

Defendant moves to dismiss Plaintiffs' Complaint on several bases.   First, Defendant

argues that the Court lacks federal diversity jurisdiction over this matter.   In its reply, Defendant

argues, in the alternative, that the Court should abstain from exercising jurisdiction over this case.

Additionally, Defendant argues that no valid agreement to arbitrate exists.   Specifically,

Defendant argues that the arbitration provision in the Admission Contract is unenforceable

because: (1) it does not satisfy the FAA's interstate commerce requirements; (2) it is

unconscionable; (3) it does not bind Defendant, as the representative of Mr. Spradlin's estate; (4)

Hobbs Center breached its fiduciary duty to Mr. Spradlin; and (5) the arbitrator designated by the

parties is unavailable.

I.      <u>Defendant's Motion to Dismiss</u>

    A.    <u>Diversity</u>

Section 4 of the FAA contains only a limited grant of federal court jurisdiction, permitting a party to seek an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Thus, the FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citation omitted). Here, the independent jurisdictional basis alleged by Plaintiffs is diversity of citizenship under 28 U.S.C. § 1332(a).

Diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000. *Id.* Defendant does not dispute that the amount in controversy is met, but contends that complete diversity is lacking. Specifically, Defendant argues that the citizenship of all of the defendants in the State Court Action, including the administrator of Hobbs Center, David Stroud, must be considered in determining jurisdiction. Because Mr. Stroud is a New Mexico citizen, Defendant's argument continues, complete diversity is lacking.

In support of his argument that the Court should "look through" the Complaint to determine jurisdiction, Defendant relies on *Vaden v. Discover Bank*, in which the Supreme Court held that a federal court entertaining a petition to compel arbitration based upon federal question jurisdiction "should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy." 556 U.S. 49, 60 (2009). *Vaden*, however, is limited to Section 4 petitions based upon federal question jurisdiction. *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 488-91 (8th Cir. 2010); *see also THI of New Mexico at*

*Hobbs Center v. Patton* (*"Patton I"*), Case No. 2:11cv537-LH-CG, slip op. at 9 (D.N.M. Oct. 31, 2011) (Doc. 24) (adopting reasoning of *Rutherford*).   Where federal jurisdiction is based on diversity, "circuit decisions [have been] unanimous in looking only to the citizenship of the parties to the federal action."   *Rutherford*, 605 F.3d at 489.   Accordingly, *Vaden* is inapplicable here, where jurisdiction is founded on diversity of citizenship between the parties, rather than on the presence of a federal question.   *Id*; *Patton I*, slip op. at 9.

Further, "[a] traditional principle of diversity jurisdiction is that it cannot be defeated by a non-diverse joint tortfeasor who is not a party to the federal action, unless that party is indispensable under Rule 19."   *Rutherford*, 605 F.3d at 490-91 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)).   Defendant argues that Mr. Stroud is an indispensable party to this Section 4 petition, and thus may defeat diversity jurisdiction.   This argument, however, is contrary to the weight of authority.

In the context of a federal action to compel arbitration, "every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19."   *Rutherford*, 605 F.3d at 491. More specifically, "in the case of nursing home administrators, such as [Mr. Stroud], courts have held that those administrators are not necessary parties under Rule 19 when another alleged joint tortfeasor seeks to enforce arbitration."   *Canyon Sudar Partners, LLC, v Cole*, No. 3:10-1001, 2011 WL 1233320, *3 (S.D. W. Va. Mar. 29, 2011); *see also Rutherford*, 605 F.3d at 491 (administrator of nursing home not indispensable party to arbitration between nursing home and resident of nursing home); *THI of N.M. at Vida Encantada, LLC v. Archuleta*, Civ. No. 11-0399 BB/ACT, slip op. at 4-5 (D.N.M. Jan, 12, 2012) (Doc. 39) (same).   Here, "Mr. Stroud is not a necessary or indispensable party under Rule 19 because this Court can administer complete relief –

an order compelling arbitration – among the existing parties and Mr. Stroud himself is not

claiming an interest in this arbitration action that will be impaired by his absence."   *Patton I*, slip

op. at 9; *see also Archuleta*, slip op. at 4-5.   Moreover, in light of the FAA's strong bias in favor of

arbitration, "[a]lthough failing to dismiss this case may result in piecemeal litigation, this factor

alone is not compelling enough to find Mr. Stroud to be an indispensable party."   *Patton I*, slip op.

at 9-10; *Archuleta*, slip op. at 5 ("Risk of incurring inconsistent arbitration obligations, without

more, is insufficient to render a party indispensable under Rule 19.").   This Court therefore

properly limits its determination of whether diversity jurisdiction exists to the named parties in

these proceedings.

Plaintiff Hobbs Center is a Delaware limited liability company whose sole member is

Plaintiff THI.   THI is also a Delaware limited liability company, whose sole member is THI of

Baltimore, Inc., which is a Delaware corporation with its principal place of business in Maryland.

Defendant is a citizen of New Mexico.   Accordingly, there is complete diversity among the

parties, and the Court has federal jurisdiction over this matter.

B.   Abstention

Defendant, for the first time in his reply, argues that, under the doctrine set forth in

*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), the Court

should abstain from exercising its jurisdiction over this case.   The Court notes that it was

improper for Defendant to raise this new argument in a reply.   Plaintiffs, however, filed a surreply

fully responding to Defendant's abstention argument.   Accordingly, Plaintiffs are not prejudiced

by the Court's consideration of this argument.

In *Colorado River*, the Supreme Court announced an abstention doctrine under which a

federal court, for reasons of "wise judicial administration," may stay or dismiss a federal suit

8

pending resolution of a parallel state court proceeding.   424 U.S. at 817.   Because the federal

courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," the

*Colorado River* doctrine may be used only when "the clearest of justifications . . . warrrant[s]

dismissal."   *Id.* at 818-19.   Declining to exercise jurisdiction based on the *Colorado River*

doctrine is appropriate only in "exceptional" circumstances.   *Id.* at 818.   Accordingly, this

Court's "task . . . is not to find some substantial reason for the exercise of federal jurisdiction by the

federal court; rather, the task is to ascertain whether there exist exceptional circumstances, the

clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the

jurisdiction."   *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

    As a threshold issue, the Court first must determine whether the state and federal

proceedings at issue are indeed parallel.   *Fox v. Mauling*, 16 F.3d 1079, 1081 (10th Cir. 1994).

"Suits are parallel if substantially the same parties litigate substantially the same issues in different

forums."   *Id.*   The Tenth Circuit has specifically held that, in order to determine whether pending

state proceedings are parallel to the federal proceedings, the Court must "examine the state

proceedings *as they actually exist*."   *Id.* (emphasis in original).

    If the Court finds that the state and federal proceedings are parallel, "it must then determine

whether deference to state court proceedings is appropriate under the particular circumstances."

*Id.* at 1082.   In *Colorado River*, the Supreme Court enumerated a nonexclusive list of factors to

consider in deciding whether "exceptional circumstances" exist to warrant such deference: (1)

whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal

forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts

obtained jurisdiction.   *Id.* (citing *Colorado River*, 424 U.S. at 818).   The Supreme Court

discussed other factors in *Moses H. Cone*, including whether federal law provides the rule of

decision, and the adequacy of the state court action to protect the federal plaintiff's rights. *Mauling*, 6 F.3d at 1082 (citing *Moses H. Cone*, 460 U.S. at 18 n.20, 23, 28).   Other courts have considered whether the party opposing abstention has engaged in impermissible forum-shopping. *Mauling*, 16 F.3d at 1082.

The Supreme Court has counseled that no single factor is dispositive, but rather, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16.   The Court is cautioned against using the factors as a "mechanical checklist," and instead must engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.*   Finally, the Court must resolve any doubt "in favor of exercising federal jurisdiction." *Mauling*, 16 F.3d at 1802.

Here, Defendant argues that the State Court Action is parallel to the instant case, and that an analysis of the *Colorado River* factors demonstrates exceptional circumstances warranting dismissal.   The Court disagrees with both arguments.

First, although Defendant is correct that the State Court Action includes substantially the same parties as those herein, the issues in each action are not substantially the same.   The sole issue raised by Plaintiffs' Complaint herein is the enforceability of the arbitration provision in the Admission Contract; Plaintiffs have not raised this issue in the State Court Action.   Nonetheless, Defendant contends that, because Plaintiffs could have raised, and may still raise, the arbitration issue in the State Court Action, the two proceedings are parallel.   This argument ignores the Tenth Circuit's mandate that this Court examine the state proceedings *as they actually exist*, rather than as they might exist if the parties had elected to raise certain issues before the State Court.   Because the enforceability of the arbitration provision in the Admission Contract, the only issue before this

10

Court, is not *actually* an issue before the State Court, the issues in this case and the State Court

Action are not substantially the same.   *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 284, 395 n.7 (5th

Cir. 2006) (noting that a federal action to compel arbitration was not "precisely parallel" to the

state court action but declining to decide the issue); *R.J. Griffin & Co. v. Beach Club II*

*Homeowners Ass'n, Inc.*, 3 F. App'x 43, 45 (4th Cir. 2001) (where state case involved negligence

claim and federal case sought order compelling arbitration, holding that "[t]he state proceedings . .

. fail to reach [the] 'totally duplicative' threshold because they do not raise the same issues or seek

the same remedies [as the motion to compel arbitration].").

The decision in *THI of New Mexico at Las Cruces, LLC v. Fox*, 727 F. Supp. 2d 1195

(D.N.M. 2010), does not suggest a different conclusion.   In *Fox*, plaintiff nursing home had

moved to compel arbitration in state court, and the state court entered an order compelling

arbitration and dismissing the case.   Subsequently, the nursing home moved to reinstate the state

court action.   While that motion was pending, the nursing home also moved to compel arbitration

in federal court.   On the defendant's motion to dismiss the federal court action under the *Colorado*

*River* doctrine, the Court found that the state court and federal court proceedings were parallel, as

they involved identical parties "and the identical issue of whether the Arbitration Agreement is

enforceable."   *Id.* at 1209.   Unlike the circumstances in *Fox*, Plaintiffs herein did not move to

compel arbitration in the State Court Action, and thus the enforceability of the arbitration

provision in the Admission Contract is not before the State Court.   Accordingly, *Fox* is

distinguishable from the instant case, and provides no support for Defendant's argument that the

proceedings are parallel.

Even if the proceedings were parallel, consideration of the *Colorado River* factors

demonstrates that abstention is not warranted.   Because there was no assumption by either the

11

State Court or this Court of jurisdiction over any res or property, nor any contention by Defendant that this forum is any less convenient to the parties than the state forum, the first two factors favor federal jurisdiction.   *Moses H. Cone*, 460 U.S. at 939; *Fox*, 727 F. Supp. 2d at 1209.

The third factor, avoidance of piecemeal litigation, provides little support for declining to exercise federal jurisdiction.   In *Moses H. Cone*, the Supreme Court considered and rejected the same argument made by Defendant herein that an arbitration order in federal court would force the parties to resolve related disputes in different forums.   The Supreme Court explained that this "misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement."   460 U.S. at 20 (emphasis in original).   Under the FAA, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."   *Id.*   This is true regardless of whether this Court or the State Court decides the question of the enforceability of the arbitration provision in the Admission Contract.   *See id.*   Although Defendant may be required to "litigate the arbitrability issue in federal rather than state court, that dispute is easily severable from the merits of the underlying disputes."   *Id.* at 20-21.   Accordingly, "there is no force here to the consideration that was paramount in *Colorado River* itself – the danger of piecemeal litigation." *Id.* at 19.

The fourth factor, the order in which the courts obtained jurisdiction, also weighs against abstention.   By necessity, an action to compel arbitration must follow a refusal by the other party to arbitrate.   Accordingly, Plaintiffs could not have moved to compel arbitration until Defendant first filed his claims against Plaintiffs, and then refused to arbitrate them.   Further, this factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand."   *Id.* at

21.   Accordingly, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."   *Id.*   Here, Defendant commenced the State Court Action on June 29, 2011, and Plaintiffs commenced the instant action approximately two months later, on September 7, 2011.   In terms of the arbitrability issue, no progress has been made in State Court, as the issue has not been raised there, while Plaintiffs have taken all of the steps necessary to a resolution of that issue in this Court. Accordingly, in terms of the sole issue before this Court, the federal suit is "running well ahead of the state suit."   *Id.* at 22.

Consideration of the additional factor of whether federal law provides the rule of decision is less clear.   As in *Moses H. Cone*, the basic issue presented in Plaintiffs' federal suit is "the arbitrability of the dispute" between Plaintiffs and Defendant.   *Id.* at 24.   "Federal law in terms of the Arbitration Act governs that issue in either state or federal court."   *Id.*   Because, however, the federal courts' jurisdiction to enforce the FAA is concurrent with that of state courts, "the source-of-law factor has less significance."   *Id.* at 25.   At the same time, at least some of Defendant's arguments against enforceability of the Admission Contract, namely that it is unconscionable and does not bind Defendant, are governed by New Mexico law.   *See Fox*, 727 F. Supp. 2d at 1209; *Patton II*, 2012 WL 112216, at *5-6.   The Supreme Court, however, has indicated that "[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of [the surrender of federal jurisdiction], "the presence of federal-law issues must always be a major consideration weighing against surrender."   *Moses H. Cone*, 460 U.S. at 26. Accordingly, on balance, this factor weighs slightly against abstention.

13

The additional factor of the adequacy of the state court action to protect the federal plaintiff's rights "presents the strongest basis for abstaining."   *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 208 (6th Cir. 2002).   "The FAA extends Congress's legislative authority to the maximum extent permitted under the Commerce Clause, and is therefore binding on state courts that interpret contracts involving interstate commerce."   *Id.*   Accordingly, Plaintiffs' rights under the FAA would be protected in the State Court Action.   *Id.*

Finally, the additional factor of whether the party opposing abstention has engaged in impermissible forum-shopping once again points toward exercising federal jurisdiction. Defendant argues that Plaintiffs' filing of the instant action was an impermissible attempt to avoid a state court decision on the enforceability of the Admission Contract.   This argument fails to recognize that the FAA specifically provides that any party to an arbitration agreement may file an action in federal court to compel arbitration.   *Id.* at 203-04.   The act of filing an action to compel arbitration in federal court in compliance with the FAA, alone, provides no evidence of improper forum-shopping.   Further, Defendant's argument "presents only one side of an argument that both parties can make:" just as Defendant accuses Plaintiffs of forum-shopping, it is possible to view Defendant's naming of Mr. Stroud, a New Mexico resident, in the State Court Action as a strategy solely designed to preclude removal of the State Action to federal court.   *Id.*   Defendant's forum-shopping accusation thus "ignores what may have motivated his own actions."   *Id.* Moreover, unlike the circumstances in *Fox*, where the Court found that the nursing home filed "an identical motion to compel arbitration in [federal] court during the pendency of the motion to reinstate the State Court Action," here, Plaintiffs filed no such motion to compel arbitration in the State Court Action.   727 F. Supp. 2d at 1213.   Accordingly, the *Fox* court's conclusion that the

14

nursing home filed the duplicative motion "[o]ut of fear that the state court's order compelling arbitration will be vacated upon reconsideration" is inapplicable here, where there is no similar duplicative motion, no similar fear of reversal of a previous order, and thus no basis to conclude that Plaintiffs sought to compel arbitration in this Court for a "vexatious, reactive or tactical reason." *Id*.

The above analysis demonstrates that all of the factors, save the adequacy of the state court proceeding to protect the federal plaintiffs' rights, weigh against abstention.   Accordingly, no "exceptional" circumstances exist to justify abandoning the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817.   The Court thus concludes that it should not abstain from exercising jurisdiction over Plaintiffs' action to compel arbitration.

 C.  The FAA's Interstate Commerce Requirement

The FAA applies to arbitration agreements that are part of a written contract "evidencing a transaction involving interstate commerce."   9 U.S.C. § 2.   Under Section 2, "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Cole*, 2001 WL 1233320, at *10 (quoting *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)).   The reach of the FAA thus extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control."   *Citizens Bank v. Alafabco Inc.*, 539 U.S. 52, 56-57 (2003) (citation omitted).

Defendant argues that the Admission Contract "is wholly a transaction consisting of an exchange of promises between the resident and a New Mexico nursing home facility," and thus

does not meet the interstate commerce requirement of the FAA.   Doc. 9 at 16.   Plaintiffs, on the

other hand, assert that they meet the interstate commerce requirement because the Admission

Contract "relates to matters that involved transactions which affected interstate commerce."   Doc.

4 at 24.   In support of Plaintiffs' position, they attach a declaration signed by Mr. Stroud stating

that Hobbs Center is certified under the Medicare program to accept Medicare patients, including

Mr. Spradlin, and that Medicare in fact paid for a portion of Mr. Spradlin's care at Hobbs Center.

Doc. 4-1, ¶¶ 8, 10.   The declaration further states that Hobbs Center receives payment from the

New Mexico Medicaid Program, a substantial portion of which is funded by the federal

government.   *Id.* ¶ 10.   Further, the declaration asserts that Hobbs Center purchases goods and

services, including medical supplies, business office supplies and furniture, from vendors located

in multiple states.   *Id.* ¶¶ 4-7, 13-14.   Given these factors, Plaintiffs assert that the interstate

commerce requirement is met.

      "Courts which have considered similar evidence have found it sufficient to fulfill the

interstate commerce requirement of the FAA."   *Cole*, 2011 WL 1233320, at *10 (finding

interstate commerce requirement met where nursing home purchased medical supplies,

equipment, foodstuffs and cleaning supplies from out of state vendors, and resident's care was

paid for by federal government) (citing *Triad Health Mgm't of Ga. III, LLC v. Johnson*, 679 S.E.2d

785 (Ga. Ct. App. 2009) (finding evidence of out of state supply purchases and insurance providers

sufficient to show contract involving interstate commerce); *Estate of Ruszala v. Brookdale Living

Communities, Inc.*, 1 A.3d 806, 817-18 (N.J. Super. 2010) (finding facilities' purchases of out of

state supplies, food, medicine, and equipment left "little doubt that the residency agreements at

issue . . . involve interstate commerce."); *Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983,

987-88 (Ala. 2004) (finding testimony that majority of supplies and equipment were purchased by

nursing home from out of state vendors and majority of its payments came from Medicaid and

Medicare was sufficient to show interstate commerce); *Rainbow Health Care Center, Inc. v.

Crutcher*, No. 07-194, 2008 WL 268321, *5 (N.D. Okla. Jan. 29, 2008) (holding that buying

supplies from out of state vendors, standing alone, is enough to show a contract involving

interstate commerce)); see *also Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007) ("[A]ccepting

payment from Medicare, a Federal program, . . . constitutes an act of interstate commerce.").   In

light of this precedent, in addition to the "broad policy favoring arbitration," Cole, 2011 WL

1233320, at *11, the Court finds that the interstate commerce requirement is met here.

D.    Unconscionability

Defendant argues that the arbitration provision in the Admission Contract is unenforceable

because it is unconscionable.   "Unconscionability is an equitable doctrine, rooted in public policy,

which allows courts to render unenforceable an agreement that is unreasonably favorable to one

party while precluding a meaningful choice of the other party."   *Rivera v. Am. Gen. Fin. Servs,

Inc.*, 259 P.3d 803, 816 (N.M. 2011) (citation omitted).   "The doctrine of contractual

unconscionability can be analyzed from both procedural and substantive perspectives."   *Id.* at

816-17 (citation omitted).

1.    Procedural Unconscionability

Procedural unconscionability concerns "the particular factual circumstances surrounding

the formation of the contract, including the relative bargaining strength, sophistication of the

parties, and the extent to which either party felt free to accept or decline terms demanded by the

other."   *Id.* at 817.   When determining whether a contract is procedurally unconscionable, the

17

Court should consider whether the contract is one of adhesion:   "a standardized contract offered

by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it

basis, without opportunity for bargaining."   *Id.* (citation omitted).   An adhesion contract is not

unconscionable, however, unless its "terms are patently unfair to the weaker party."   *Id.*

Defendant argues that the arbitration provision of the Admission Contract is procedurally

unconscionable because it is an adhesion contract that was offered to Ms. Hardy, a woman with an

eleventh grade education, in a rushed fashion, and with no opportunity for negotiation.   While the

Admission Contract "appears to be a standardized contract and thus satisfies the first element of an

adhesion contract," Defendant has not demonstrated either that Hobbs Center "had a superior

bargaining position," or that Ms. Hardy had no opportunity to negotiate.   *Thompson v. THI of*

*N.M. at Casa Arena Blanca, LLC*, 05-1331, 2006 WL 4061187, *13-14 (D.N.M. Sept. 12, 2006).

A party has a superior bargaining position when "the weaker party virtually cannot avoid doing

business under the particular contract terms."   *Id.* at *13.   Defendant neither argues nor

demonstrates that there were no other suitable long-term care facilities available in the Hobbs area.

*Id.*   Further, while Defendant states that "it is safe to assume that Ms. Hardy had no opportunity to

negotiate the terms" of the Admission Contract," Doc. 9 at 20, he has made no showing that Hobbs

Center "did not afford [her] an opportunity to negotiate, or that [she] attempted to negotiate and

was rebuffed."   *Thompson*, 2006 WL 4061187, at *14.   The facts stated in Ms. Hardy's affidavit

are insufficient to establish that the Admission Contract was a contract of adhesion.   *See id.*

Nor do Defendant's assertions regarding Mr. Spradlin's compromised mental state and Ms.

Hardy's limited understanding of the arbitration provision establish procedural unconscionability.

Specifically, Defendant appears to argue that the circumstances under which Hobbs Center

presented the Admission Contract to Ms. Hardy were unconscionable, both because Mr. Spradlin

was suffering from dementia, and thus was not competent to sign the Power of Attorney, and

because Ms. Hardy, due to her own limitations and the rushed nature of the situation, did not

understand what she was signing.   Ms. Hardy, however, did not sign the Admission Contract

pursuant to any authority allegedly given to her by the Power of Attorney.   To the contrary, Ms.

Hardy indicated in the Admission Contract, by checking one of several available boxes, that she

was executing the document in the capacity of "immediate family member."   Although she had

the option of checking a box that read "Attorney-in-Fact under validly executed power of

attorney," Ms. Hardy did not check that box.   Accordingly, the validity of the Power of Attorney

is irrelevant both to the validity of the Admission Contract in general, and to the specific issue of

whether the circumstances under which Hobbs Center presented the Admission Contract to Ms.

Hardy render the Admission Contract unconscionable.   Further, Defendant has presented no

evidence that Ms. Hardy ever told anyone at Hobbs Center that she did not understand the

Admission Contract or requested clarification of its terms, or that Hobbs Center staff acted

wrongfully in securing her signature.   Defendant's assertions that Ms. Hardy has no legal training

or experience, did not understand the term "arbitration", and felt rushed when she signed the

Admission Contract fall short of showing that Ms. Hardy "was of such diminished capacity or

intelligence that she was incapable of understanding the [Admission Contract] or that Hobbs

Center used fraud or misrepresentation, or otherwise acted wrongfully." *Patton II*, 2012 WL

112216, at *22; *see also Thompson*, 2006 WL 4061187, at *14.

19

2.      Substantive Unconscionability

Substantive unconscionability concerns the legality and fairness of the contract terms themselves, and the analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns."   *Rivera*, 259 P.3d at 817 (citation omitted). Accordingly, "[a] contract provision is substantively unconscionable if it is grossly unreasonable and against our public policy under the circumstances." *Id.* (citation omitted).

Defendant argues that the arbitration provision in the Admission Contract is substantively unconscionable because it "is one sided to the detriment of Mr. Spradlin."   Doc. 9 at 22.   The Court disagrees.   The arbitration provision requires Mr. Spradlin *and* Hobbs Center to arbitrate all claims which either party may have.   *See Thompson*, 2006 WL 4061187, at *15.   Specifically, the arbitration provision states that any action arising between the parties and arising out of "any past, present or future incidents, omissions, acts, errors, practices, or occurrences causing injury to either party" shall be resolved by binding arbitration.   Doc. 1-1, at 5.   "That [Hobbs Center] may have fewer possible claims that it could bring, does not mean that it may have fewer claims than [Mr. Spradlin]."   *Thompson*, 2006 WL 4061187, at *15.   Further, "[t]he arbitration provision divests [Hobbs Center] of its right to have its claims decided in a court in the same manner as it divests [Mr. Spradlin]."   *Id.*   Accordingly, the arbitration provision is "not grossly unfair."   *Id.*

Further, the arbitration provision is not hidden in the Admission Contract, but rather is "plainly visible directly above the signature lines, is labeled "ARBITRATION" in bold, capital letters, and is in the same font and type size as the other provision titles in the Admission

Contract."  *Id.*   Ms. Hardy, "as a party to the Admission Contract, had a duty to read and

familiarize [herself] with the contents of the Contract."   *Id.*

In support of his substantive unconscionability argument, Defendant cites to a decision by

the Supreme Court of West Virginia, which held that "as a matter of public policy under West

Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an

occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced

to compel arbitration of a dispute concerning the negligence."   *Brown v. Genesis Healthcare

Corp.*, __ S.E.2d __, 2011 WL 2611327 (W. Va. June 29, 2011).   The United States Supreme

Court, however, reversed this decision, holding that "[t]he West Virginia court's interpretation of

the FAA was both incorrect and inconsistent with clear instruction in the precedents of this Court."

*Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201 (2012).   Specifically, the Court

explained that "West Virginia's prohibition against predispute agreements to arbitrate

personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting

arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the

FAA."   *Id.* 1203-04.   The West Virginia decision thus provides no basis for the Court to

conclude that the Admission Contract is substantively unconscionable as against public policy.

Indeed, another Court in this District has held to the contrary, finding an arbitration provision

identical to the one here to be "in accordance with public policy in the federal system and New

Mexico."   *Thompson*, 2006 WL 4061187, at * 15.   This Court agrees with that finding.

Finally, Defendant argues that the Admission Contract gives Hobbs Center "an unfair

advantage" by naming the National Health Lawyers Association ("NHLA") as the arbitrator of

potential disputes between the parties.   Doc. 9 at 22.   Defendant, however, provides no factual

basis for its claim that the NHLA is unlikely to provide a neutral and fair forum.   In the absence of any such foundation, Defendant's claim is insufficient to establish unconscionability.   *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (rejecting speculative claim that arbitration panels will be biased).

       E.      <u>Breach of Fiduciary Duty</u>

Defendant argues that Plaintiffs had a fiduciary duty to Mr. Spradlin, and breached that duty by: (1) presenting an unconscionable contract of adhesion to Ms. Hardy to sign on behalf of her father; (2) rushing Ms. Hardy into signing an agreement she did not understand; and (3) allowing Ms. Hardy to sign the Admission Contract based on an invalid power of attorney.   As an initial matter, Defendant has not provided, and the Court has not found, any authority for the proposition that, under New Mexico law, a nursing home owes a fiduciary duty to a prospective patient who has not yet entered into an admission contract.   In the insurance context, the New Mexico Court of Appeals has explained that "[a] fiduciary relationship exists when specific confidence has been placed in one party who in equity and good conscience is bound to act in good faith and with due regard to the interests of the other party."   *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 926 (N.M. Ct. App. 2003).   Applying this standard, the Court found that an insurance company has a fiduciary obligation toward an insured "in matters pertaining to the performance of obligations in the insurance contract."   *Id.*   The Court, however, expressly "decline[d] to acknowledge the existence of the insurer's fiduciary duty before the issuance of the policy."   *Id.*   At the application stage, the Court explained, "the relationship between insurer and insured is similar to that of buyer and seller, and the transaction is little more than an arms-length negotiation involving the purchase of insurance.   Ordinarily, a buyer-seller relationship is not

fiduciary in nature, even though the seller typically has superior bargaining power and knowledge." *Id.*

This reasoning is equally applicable here.   Assuming, *arguendo*, that Hobbs Center had a fiduciary duty toward Mr. Spradlin, as a resident patient, in matters pertaining to the performance of the Admission Contract, such a fiduciary relationship necessarily could not have arisen until there was actually a signed Admission Contract binding both parties.   Accordingly, when Hobbs Center presented the Admission Contract to Ms. Hardy for her signature, the relationship between Hobbs Center and Mr. Spradlin was similar to that of buyer and seller, and the transaction was little more than an arms-length negotiation involving the purchase of nursing home services. Under *Azar*, the relationship between Mr. Spradlin and Hobbs Center, at that stage, was not fiduciary in nature, regardless of whether Hobbs Center had superior bargaining power and knowledge.

Indeed, even if such a fiduciary duty did exist, Defendant has failed to establish that Plaintiffs breached it.   First, as discussed above, the Admission Contract was not a contract of adhesion, or otherwise procedurally or substantively unconscionable.   Also as discussed above, Defendant has presented no evidence that Ms. Hardy was misled into executing the Admission Contract.   Ms. Hardy's affidavit is devoid of allegations that she expressed any confusion about the Contract, or requested and was refused clarification of its terms.   Defendant's assertions that Ms. Hardy has no legal training or experience, did not understand the term "arbitration", and felt rushed when she signed the Admission Contract fall short of showing that Plaintiffs acted wrongfully in presenting her with the Admission Contract.

Finally, as discussed above, Ms. Hardy did not sign the Admission Contract in the capacity of Mr. Spradlin's attorney-in-fact based on the Power of Attorney.   Although Mr. Spradlin signed the Power of Attorney during the process of admission to Hobbs Center, Ms. Hardy made no representation to Plaintiffs that she was entering into the Admission Contract in her capacity as Mr. Spradlin's "agent" pursuant to that Power of Attorney.   Accordingly, it is irrelevant whether the Power of Attorney was valid, and whether, by virtue of the Power of Attorney, Ms. Hardy had an agency relationship with her father that would have allowed her to enter into the Admission Contract as his attorney in fact.

Indeed, such an agency relationship was not required to create an enforceable Admission Contract binding Mr. Spradlin to its terms.   Under New Mexico law, although not a signatory to a contract, a third-party beneficiary of a contract may be bound by that contract.   *Fleet Mort. Corp. v. Schuster*, 811 P.2d 81, 82 (N.M. 1991).   "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id.* at 83.   "Such intent must appear either from the contract itself or from some evidence that the [third party] is an intended beneficiary." *Id.*   The third-party beneficiary doctrine applies to arbitration contracts.   *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 242 P.3d 351, 358 (N.M. Ct. App. 2010) (compelling arbitration pursuant to third-party beneficiary doctrine), *rev'd on other grounds*, 259 P.3d 803 (N.M. 2011).   Further, "a number of courts in other jurisdictions have used the third-party beneficiary doctrine to compel a non-signatory to arbitrate in circumstances similar to those here." *Patton II*, 2012 WL 112216, at *8 (collecting cases).   "This Court concludes that the New Mexico Supreme Court would likely follow the reasoning of [those cases] extending the third-party beneficiary doctrine to the situation at hand." *Id.*

24

Here, the undisputed facts establish that Mr. Spradlin was a third-party beneficiary of the Admission Contract.   He was the named resident to be admitted to the facility, and the terms of the Admission Contract refer to benefits and responsibilities of the resident.   *See* Doc. 1-1.   Mr. Spradlin's care was the essential purpose of the Contract.   *Id.* at 3-4.   Indeed, in his motion to dismiss, Defendant acknowledges that Ms. Hardy admitted Mr. Spradlin to Hobbs Center "because he could not live independently and take care of his daily needs" and that "[h]e relied upon the staff of the [F]acility to provide for his activities of daily living" and "trusted the [F]acility to care for him."   Doc. 9 at 18.   Further, Ms. Hardy chose Hobbs Center because Mr. Spradlin's doctor recommended that he be admitted there.   Doc. 9-1, ¶ 3.   Mr. Spradlin obtained the benefits of residency and care at Hobbs Center for more than two years pursuant to the Admission Contract.   Accordingly, Mr. Spradlin was a third-party beneficiary of the Admission Contract, and, as such, was bound by its terms.[1]

### F.   Unavailability of Designated Arbitrator

Defendant argues that the arbitration provision of the Admission Contract is unenforceable because the NHLA, the designated arbitration provider, no longer exists.   Doc. 9 at 23.   In support of this argument, Defendant relies on *Rivera*, where the Court held that, if the parties' designation of a particular arbitration provider is "integral to the parties' agreement to arbitrate," rather than "merely an ancillary logistical concern," the unavailability of the designated arbitration provider renders the arbitration agreement unenforceable.   259 P.3d at 811-12, 815.

---

1 Indeed, Defendant has never refuted that Mr. Spradlin was a third-party beneficiary of the Admission Contract. Plaintiffs explicitly asserted in their memorandum in support of their motion to compel arbitration that Mr. Spradlin was bound by the Admission Contract because, *inter alia*, he was a third-party beneficiary of that Contract. Defendant's silence in response must be deemed a concession of this point.

Here, in 1997, the NHLA and the American Academy of Healthcare Attorneys merged into a single organization, the American Health Lawyers Association ("AHLA").   Under these circumstances, the Court does not find that the parties' designated arbitrator is "unavailable" for purposes of the *Rivera* analysis.   The NHLA still functions; it is simply "now known as the . . . AHLA."   *Fox*, 727 F. Supp. 2d at 1198 n.1.   The Court finds that "the merger of NHLA with another entity and adoption of a new (combined) name did not, alone, prevent a meeting of the minds which rendered the arbitration [provision of the Admission Contract] invalid."   *THI of S.C. at Columbia, LLC v. Wiggins*, No. 3:11-888, 2011 WL 4089435, *7 (D.S.C. Sept. 13, 2011).

G.    Binding Effect of the Admission Contract on Defendant

Invoking the principle that "generally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration," *Horanburg v. Felter*, 99 P.3d 685, 689 (N.M. Ct. App. 2004), Defendant argues that he is not bound by the Admission Contract.   According to Defendant, he cannot be compelled to arbitrate his state claims against Plaintiffs because he did not sign the Admission Contract.   Doc. 9 at 23-24.   The issue of whether a non-signatory can be bound by, or compel arbitration under, an arbitration agreement is governed by state law.   *See Arthur Anderson LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009).

Defendant brought his wrongful death claims against Plaintiffs under the New Mexico

Wrongful Death Act ("the Act"), which provides in relevant part:

> Whenever the death of a person shall be caused by the wrongful act, neglect or
> default of another, . . . and the act, or neglect, or default, is such as would, if death
> had not ensued, have entitled the party injured to maintain an action and recover
> damages in respect thereof, then, and in every such case, the person who, or the
> corporation which, would have been liable, if death had not ensued, shall be liable
> to an action for damages, notwithstanding the death of the person injured.

NMSA 1978, § 41-2-1.   The Act is "a survival statute [that] provides a cause of action for the

benefit of the statutory beneficiaries to sue a tortfeasor for the damages, measured by the value of

the decedent's life, *which the decedent himself would have been entitled to recover had death not

ensued*."   *Romero v. Byers*, 872 P.2d 840, 846 (N.M. 1994) (citation omitted; emphasis added).

Defendant is correct that Section 41-2-3 permits "consideration [of] the pecuniary injury

resulting from the [decedent's] death to the surviving party."   *Romero*, however, makes clear that

such injury is to be considered only "as an element of the worth of the life of the deceased."

*Romero*, 872 P.2d at 845.   Thus, as set forth in the statute and as confirmed by the New Mexico

courts, wrongful death claims are derivative of a decedent's rights, and a wrongful death

beneficiary has no claim save those claims that the decedent herself would have had.   *See Maestas

v. Overton*, 526 P.2d 203, 204 (N.M. Ct. App. 1974) ("A literal reading of [the Act] gives the

personal representative a cause of action, only if the decedent would have had one absent death."),

*rev'd on other grounds*, 531 P.2d 947 (N.M. 1975).

Under the Act, Defendant, as the representative of Mr. Spradlin's estate, has only those

claims that Mr. Spradlin, had he lived, would have had.   As discussed above, Mr. Spradlin, as a

third-party beneficiary, was bound by the Admission Contract to submit his claims to arbitration.

Defendant, as personal representative of Mr. Spradlin's estate, derives his claims through Mr. Spradlin.   Defendant thus is equally bound to submit the claims of Mr. Spradlin's estate to arbitration.   *See Patton II*, 2012 WL 112216, at *10.

II.   Plaintiffs' Motion to Stay and/or Dismiss Proceedings

Plaintiffs move to stay the instant proceeding.   Doc. 4 at 26.   Neither Section 3 nor Section 4 of the FAA requires the Court to stay this case when the only issue before it is whether to compel arbitration, and that issue has been resolved, as discussed above.   *Patton II*, 2012 WL 112216, at * 24; *Am. Heritage Life Ins. Co. v. Beasley*, 37 F. App'x 712 (5th Cir. 2002) ("Here, the only issue before the district court was whether to compel arbitration.   When it did so, there was nothing more for it to do but execute judgment."). Accordingly, the Court will dismiss rather than stay this case.

Plaintiffs also move to stay the State Court Action pending arbitration, under Section 3 of the FAA, the All Writs Act, and the Anti-Injunction Act.   Doc. 3 at 26.   Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall upon application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.   This provision applies only when the Court has the underlying substantive suit before it.   *Patton II*, 2012 WL 11216, at * 23.   Here, Defendant brought his substantive claims against Plaintiffs in state court, while Plaintiffs moved to compel Defendant to arbitrate those claims in federal court.   Section 3 of the FAA thus does not apply to this situation.

28

Plaintiffs also rely on the All Writs Act, which provides that a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."   28 U.S.C. § 1651.   The relief of the All Writs Act, however, is subject to the limitations set forth in the Anti-Injunction Act, which provides:   "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."   28 U.S.C. § 2283.   "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."   *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

The Court is not persuaded that the FAA authorizes or requires an injunction to stay the State Court Action.   Because Section 3 provides only that "the court in which such suit is pending" must stay proceedings if arbitration is required," it is "not the express, unambiguous grant of authority by Congress for a federal court to stay state court proceedings."   *Patton II*, 2012 WL 112216, at * 24.   Nor is the Court persuaded that a stay of the State Court Action is necessary to aid its jurisdiction or to protect or effectuate its judgments.   The Court expects the parties to comply with this Order compelling Defendant to arbitrate his claims in the State Court Action against Plaintiffs.   In the event of noncompliance, a judgment enforcement action to compel compliance is available to the aggrieved party.   "This Court therefore has the tools at its disposal to protect and effectuate its judgment and to aid in its jurisdiction without resorting to an injunction against the state court."   *Id.*   Moreover, the State Court is equally bound to follow the FAA, "and there is no reason to believe the State Court will force Defendant to proceed with [his] claims

against [Plaintiffs] in contravention of the FAA and this Order." *Id.*   The Court thus denies

Plaintiffs' request for an order staying the State Court Action.   *Id.*

III.   <u>Plaintiffs' Motion to Strike</u>

After his motion was fully briefed, on May 24, 2012, Defendant filed a Notice of Receipt

of Additional Records and intent to File Supplement with Respect to Defendant's Motion to

Dismiss and Reply Thereto."   Doc. 24.   In the Notice, Defendant advises that he retained an

expert to review Mr. Spradlin's medical records, which Defendant recently had received, and to

provide an opinion, based on that review, of Mr. Spradlin's lack of competence to sign the Power

of Attorney.   Defendant further advised that he planned to file a supplementary pleading in

support of his motion to dismiss, based on the expert's opinion.

Thereafter, on June 12, 2012, Defendant filed his Supplement with Respect to His Motion

to Dismiss and Reply Thereto.   Doc. 27.   In the Supplement, Defendant asserts that his expert has

reviewed medical records "necessary in order . . . to fully and properly evaluate Mr. Spradlin's

competence at the time of his admission to the Hobbs facility."   *Id.* at 1.   Defendant argues that

his expert's opinion, based on that review, supports his previous arguments that the Admission

Contract is unenforceable.   On June 21, 2012, Plaintiffs moved to strike Defendant's Supplement.

As discussed above, the Court has concluded that Mr. Spradlin's competence at the time of

his admission to Hobbs Center is irrelevant to the validity of the Admission Contract in general,

and to the specific issue of whether the circumstances under which Hobbs Center presented the

Admission Contract to Ms. Hardy render the Admission Contract unconscionable or constitute a

breach of fiduciary duty.   Ms. Hardy did not execute the Admission Contract as Mr. Spradlin's

attorney-in-fact pursuant to the Power of Attorney.   Accordingly, whether the Power of Attorney

effectively conferred agency authority upon Ms. Hardy has no bearing on whether Mr. Spradlin is bound by the Admission Contract.   Instead, Mr. Spradlin is bound by the Admission Contract because he is, undisputedly, an intended third-party beneficiary of that Contract.   Mr. Spradlin's competency at the time of his admission to Hobbs Center thus is irrelevant to the enforceability of the Admission Contract.   It follows that Defendant's expert's opinion as to Mr. Spradlin's competency provides no assistance to the Court in its determination of the issues raised on the parties' respective motions.   Accordingly, the Court has declined to rely on Defendant's Supplement in reaching its decision on the motions before it.   For this reason, Plaintiffs' Motion to Strike is moot.

## CONCLUSION

The Court has diversity jurisdiction over Plaintiff's Section 4 petition, and there is no basis for the Court to abstain from exercising that jurisdiction.   Plaintiffs have satisfied their burden of establishing an agreement to arbitrate that binds Plaintiffs and Defendant.   The Court finds that the interstate commerce requirement of the FAA is met here.   The Court does not conclude that the Admission Contract is procedurally or substantively unconscionable, that Plaintiffs breached a fiduciary duty owed to Mr. Spradlin, or that the designated arbitrator is unavailable.   Further, it is undisputed that all of Defendant's claims in the State Court Action fall within the scope of arbitrable claims within the Admission Contract.   Under Section 4 of the FAA, the Court thus compels Defendant to arbitrate his state claims against Plaintiffs.   The Court has resolved the only issue before it in this matter, and thus dismisses this case.   Because it lacks authority to do so, the Court declines to stay the State Court Action.   The Court has declined to rely on Defendant's supplementary pleading in reaching its decision on the motions before it.

31

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss [Doc. 9] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Arbitration [Doc. 3] is **GRANTED** in part and **DENIED** in part, as follows: (1) Plaintiffs' request to compel arbitration is **GRANTED**; (2) this Court **ORDERS** Defendant to arbitrate the claims asserted in the State Court Action against Plaintiffs in accordance with the terms of the arbitration provision in the Admission Contract; (3) Plaintiffs' request for an order to stay the State Court Action is **DENIED**; (4) Plaintiffs' request to stay this proceeding is **DENIED**; and (5) this case is therefore **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendant's Supplement with Respect to His Motion to Dismiss [Doc. 32] is **DENIED AS MOOT**.

DATED this 25th day of September 2012.

_____
MARTHA VÁZQUEZ
United States District Judge